SMITH, PETITIONER, v. HARRIS, RESPONDENT.

1. ELECTIONS—IRREGULAR CERTIFICATES.
The wrongful certifying by the secretary of state of the names of particular candidates cannot deprive voters of their franchise or destroy the efficacy of their ballots cast for other candidates, who were legally and properly nominated and certified.
2. ELECTIONS—DUTY OF COUNTY CLERK.
It is the duty of the county clerk to cause to be printed the names as certified to him by the secretary of state. If such nominations

were improperly certified, it constitutes no such error or omission
* * * in the publication of the names or description of the candi-
dates as he is authorized by statute to correct.

3. ELECTIONS—EMBLEM.

Unless the county convention represented the party that selected the
miner as the emblem for the state ticket, its nominees were not en-
titled to have their names printed on that ticket.

4. ELECTION CONTESTS—PLEADING.

The same particularity is required in stating causes of contest in this
court under rule 39 as in cases of other county officers under the
statute.

5. JURISDICTION.

This court has jurisdiction of an election contest in relation to the of-
fice of county judge.

ORIGINAL proceeding in this court.

This proceeding was instituted by Emery A. Smith to con-
test the election of Ira Harris, as county judge of El Paso
county. The petition sets forth five separate causes of con-
test, which in brief are as follows:

First: That the county clerk of El Paso county caused to
be printed illegal ballots which were used to the prejudice
of the contestor at the election held in said county on the
8th day of November, 1892, and that about two hundred
votes were lost to contestor by such illegal printing of said
ballots. The facts relied upon as showing such illegality are,
that the presidential electors nominated by a convention of
the democratic party of the state, John N. Carlisle, James A.
Shinn, Charles O. Unfug and Ansel Watrous, resigned as
such electors, and that in their stead the committee authorized
by such convention to fill vacancies nominated the presiden-
tial electors of the peoples' party, to wit: Higley, Berry,
Overholt and Hanchett, and that the secretary of state certi-
fied to the county clerk of El Paso county the resignation of
the first named electors, and the latter named electors as pres-
idential electors of the democratic party, under the device or
emblem chosen by said convention of the democratic party,
to wit, the rooster.

And that the said clerk of El Paso county printed said
names as such electors, notwithstanding the fact that they

had declined to accept such nominations. That a convention of the democratic party held in and for the county of El Paso certified a list of nominations, among which was the name of contestor as the nominee for county judge on said ticket. That the county convention failed to select any device or emblem, and that the county clerk published the list of nominations so made by the county convention on the ticket headed by the rooster emblem. That proceedings were instituted to compel the county clerk to print the rooster ticket without the names of the last named electors, which relief was refused by the judge to whom such application was made; and that notwithstanding the objection made by the chairman and secretary of said county convention, the county clerk proceeded to and did cause to be printed the names of said electors upon that ticket.

The second ground of contest is substantially the same as the first, except that therein it is alleged that the county clerk was requested, by the chairman and secretary of said democratic county convention, to print contestor's name on another ticket under the device of the miner. That said clerk declined so to do, and thereupon an application was made to the proper court for an order to compel him to so print the name of contestor on both of said tickets; which application was denied. That by reason of the county clerk's refusal to print contestor's name on the ticket with the device of the miner, he lost many votes thereby, aggregating at least the number of two hundred.

In the third ground of contest it is alleged that the election judges in each and every precinct of the county rejected a large number of legal votes given for contestor, exceeding two hundred, for the reason that a cross was not placed in such a position as to have the effect of voting for contestor.

The fourth ground of contest is that at least two hundred legal voters and electors of said county were misled and deceived by persons friendly to contestee and on his behalf, as to the boundaries of their respective precincts, and were registered in wrong precincts, and were thereby wrongfully

and intentionally deprived of their elective franchise, and that such voters would have voted for the contestor.

The grounds of contest alleged in the fifth cause of action are that the boards of registration in precincts five and six of said county failed to properly register voters therein, and that the registration lists in such precincts were false, illegal and fraudulent; and for that reason divers legal electors were prevented from voting in said precincts at said election; and that a number of illegal votes were cast in said two precincts, and that it was impossible to ascertain the true number of legal votes cast in said precinct at said election.

Prays that contestor be declared elected to the office of county judge, or in the alternative that the election be declared void so far as regards the election of contestee.

To the petition of the contestor the contestee interposes a demurrer to each separate cause of contest, for the reason that the same fails to state sufficient facts to constitute a cause of action; second, because the court has no jurisdiction in the subject-matter referred to in said petition; third, because the petition is ambiguous, unintelligible and uncertain, etc.

Mr. William Dillon, for petitioner.

Mr. J. K. Goudy, for respondent.

Per Curiam. The illegality complained of in the first cause of contest consists in the printing of the names of Higley, Berry, Overholt and Hanchett as presidential electors upon the ticket designated as the rooster ticket.

That by reason of the printing of those names thereon a large number of voters refused and declined to vote that ticket, and thereby contestor lost their votes. The insufficiency of this claim to entitle contestor to the office seems to be conceded by his counsel in his argument; but it is insisted that if insufficient for that purpose, it should be held adequate cause for voiding the election.

If it be conceded that the secretary of state acted illegally

in certifying those names, in accordance with a certificate of their nomination by the committee, without their acceptance being first had, or in refusing to certify their declination and therefore the names were illegally printed upon that ticket, —such illegal action could in no way affect other candidates properly printed thereon—much less affect other ballots legally and properly certified and printed.

The misconduct of the secretary of state (if his action can be held to be such), in wrongfully certifying the names of these particular candidates, could not deprive voters of their franchise, or destroy the efficacy of their ballots cast for other candidates who were legally and properly nominated and certified.

To this effect is the decision of this court in *Allen v. Glynn*, 17 Colo. 338.

The remedy, if any existed, for the alleged misconduct of the secretary of state, should have been sought in a proper proceeding against him. It was not properly invoked in this case. It was the duty of the county clerk to cause to be printed the names as certified to him. Sec. 17, p. 150, Laws of 1891.

If such nominations were improperly certified, it constituted no such error or omission * * * in the publication of the name or description of the candidates as the county clerk was authorized to correct under sec. 20, p. 152, Laws of 1891.

The second cause of contest is of the same purport, with the additional fact alleged that the county clerk refused to print contestor's name upon the " Miner " ticket. Whether it was the duty of the clerk to so print it, we have no means of knowing. It is alleged that a democratic county convention nominated and certified to the county clerk a list of candidates, including contestor's name; that the convention neglected to select or designate any emblem. It appears that there were two factions of the democratic party, and that each held a separate state convention; but it nowhere appears which wing or faction of the democratic party this county convention represented. Unless the convention represented

the party that selected the miner as the emblem for the state ticket its nominees were not entitled to have their names printed on that ticket. The contestor had no right to have his name on more than one ticket by reason of his nomination by that convention. We cannot, therefore, determine whether the county clerk acted illegally in this particular or not; and we must indulge the presumption that his acts were legal and proper.

The third cause as alleged is obnoxious to demurrer for indefiniteness. The fourth and fifth are insufficient under the rule announced in *Todd v. Stewart,* 14 Colo. 286.

The same particularity is required in stating causes of contest in this court under rule 39 as in cases of other county officers under the statute.

Demurrer is sustained as to the first and third grounds and overruled as to the second.